## Case No. 1,458.

### In re BLACK et al.

[2 N. B. R. (1874) 171 (Quarto, 65).] [1]

District Court, S. D. New York.

BANKRUPTCY—SUFFERING EXECUTION—PREFERENCE—SHERIFF—POUNDAGE.

Creditors taking out executions against property of debtors not having reasonable cause to believe him insolvent, such executions are valid. A sheriff is entitled to poundage on a levy at the time he makes the levy.

[For decree requiring the sheriff to pay over the fund in his hands, realized on execution against the bankrupts, to the assignee, see Case No. 1,457.]

---

## Case No. 1,459.

### In re BLACK et al.

### Ex parte SKILTON et al.

[17 N. B. R. 399.] [1]

District Court, D. Massachusetts. April 3, 1878.

BANKRUPTCY—FRAUDULENT PREFERENCE—RECOVERY BY ASSIGNEE—PROOF OF CLAIM.

[1. Act Cong. June 22, 1874, § 12, allowing assignees in bankruptcy to recover back moneys paid contrary to the bankrupt law, provided the person receiving such payments had knowledge of the fraudulent intent, and providing that such person, if a creditor, should not, in cases of actual fraud on his part, be allowed to prove more than a moiety of his debt, limits the disability to cases of actual fraud, and not to cases of mere knowledge that a preference was intended.]

[Cited in Re Graves, 9 Fed. 821; Re Aspinwall, 11 Fed. 138; Re Cadwell, 17 Fed. 694. Followed in Re Kaufman, Case No. 7,627.]

[2. The amendment enlarges the right of proof, and applies to cases pending in bankruptcy at the time of its passage.]

[In bankruptcy. Proceeding to prove debt against Black, Currier & Osgood, bankrupts. Debt admitted to proof.]

E. Avery, for creditors.

S. K. Hamilton, for assignees.

LOWELL, District Judge. Skilton & Dole, creditors who had been preferred by the bankrupts, offer the same debt for proof, the preference having been recovered of them by the assignees and paid on execution. The circumstances of the bankruptcy were peculiar. The bankrupts undertook to pay all their creditors fifty per cent. upon their respective debts, out of court, and paid a few of them, and became bankrupt with no assets. There were two theories as to the cause of the failure to carry out the informal composition: One was, that the bankrupts had concealed the joint assets; and the other, that they had failed through inability to pay so large a proportion as they had offered. Different juries adopted both theories. One gave a verdict against these creditors for the fifty per cent., on the ground of an inability which they found to have been known to the preferred creditors; and another convicted one of the bankrupts of concealing assets, upon which he was duly sentenced to imprisonment. The preference was given and the bankruptcy occurred before December 1, 1873, and, of course, before the act of June 22, 1874 (18 Stat. [181]), was

---

passed; but the cases were disposed of, and the judgments obtained and satisfied after the latter date.

The statute of 1874 (section 12), providing for proceedings in involuntary bankruptcy, declares that the assignees may recover back money paid contrary to the act, that is, to the bankrupt law, into which this section is incorporated, provided the person receiving such payments had knowledge of the fraudulent intent, and then says: "And such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt; and this limitation on the proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy." The section for which this section 12 is substituted, provided, that if the assignees recovered back a preference, the creditor should prove no part of his debt. This provision gave the courts some trouble, because by another section it was declared that a preferred creditor should not prove any part of the preferred debt, that is, any amount above the payment, unless he surrendered the money or other property improperly paid him; which, of course, implied that if he did surrender, he might prove. Some judges thought the inconsistency might be reconciled by applying one to voluntary and the other to involuntary bankruptcies, but this was seen to be unjust and was overruled, and congress, in the amendment, expressly says, that it shall apply to both. The courts had already settled, by a great preponderance of decisions, that, considering the different language of the two sections, a surrender by the preferred creditor should mean a voluntary giving up of his preference, in which case he might prove; but if he chose to contest the assignees' title, and judgment was recovered against him, and levied, he should not prove; though he might, by permission of the court, even after an opinion had been given against him, and the charge was ripe for judgment, pay back the amount due, and the costs, and prove his debt. The effect of the amendment, in cases to which it applies, appears to be to adopt the decisions which apply the section to voluntary as well as involuntary cases; but to modify the statute itself by providing that the disability to prove a preferred debt, after a recovery of the assignees, should depend on actual fraud on the part of the creditor, which must mean something more than mere knowledge by him that a preference was intended, else it would be no amendment, and the change of language would be unexplained. Judge Blatchford, reconsidering a former opinion of his own, has decided that after a recovery against a preferred creditor, he can prove no part of his debt under any circumstances. In re Stein [Case No. 13,352]. His reason is,

that "surrender" still means a voluntary act by the creditor. If the construction of that word decided the question, I might agree to this result; but the very section which declares that the creditor shall prove only a moiety of his debt, if he, himself, has been fraudulent, is one which relates to a recovery by the assignee, and it is impossible, I think, to sever the connection and say that a penalty which has been repealed, excepting in certain cases and to a certain extent, remains in full force. The meaning of the statute appears to me to be plain, that after a recovery of the damages and costs, the creditor may prove his debts, if he has not actively assisted in the fraud. This corresponds with the general practice in bankruptcy, which has always admitted such debts to proof. But does this case come within the amendment? The amendment appears reasonable, because the creditor who receives payment of his debt may be guilty of the merest technical fraud, and one which is not a fraud unless the debtor becomes bankrupt within a short time; and therefore, I consider the amendment a wise and expedient one and to put the matter on its just footing. It says, in effect, that the penalty for honestly defending an action shall be, as in other cases, the damages and costs, and not an added loss, having no natural connection with that defence. The statute is just, and also remedial, because it enlarges the rights of honest creditors to prove their debts, cutting off only those who have attempted to commit an actual fraud.

The decisions, so far as there are any, hold that statutes, enlarging rights of proof, apply to cases pending in bankruptcy at the time of their passage; but if there were no cases, I think the principle is so. The argument was forcibly pressed, that the section itself says it shall apply to cases begun since December 1, 1873; but the words of that part of the section are "all cases of compulsory or involuntary bankruptcy commenced" since that time; and the part now under consideration says it shall apply to voluntary as well as involuntary cases; which, I think, shows that the former clause refers to proceedings in compulsory bankruptcy, which are the principal burden of that section, and in which great changes were made not properly applicable to pending cases, and not to this clause, which is a provision of a general character, intended to regulate the right of proof in both classes of cases, and, therefore, is independent of the limitation expressly adapted to involuntary cases.

Debt admitted to proof.