## In re GRAVES, Bankrupt.

*(District Court, D. Delaware. 1881.)*

1. PAYMENT—EVIDENCE OF—DECLARATIONS OF CREDITORS.

A declaration previously made by petitioning creditors, who afterwards sought to have their claims proven before the register in bankruptcy, that such claims were paid on the supposition that they were entitled to a security or securities which gave them an unlawful preference under the bankrupt act, which preference was afterwards set aside as void by the court, is not sufficient of itself to sustain a plea of payment.

2. LIMITATIONS—PROVING CLAIMS.

If a claim is not barred by the state statute of limitations before the adjudication of bankruptcy, the statute of limitations does not commence to run; and no lapse of time will prevent the proof of such claim before the register up to the final distribution of dividends. If it is barred by the statute before the adjudication it will remain barred, and the claim cannot be proven.

3. UNLAWFUL PREFERENCES — DECREE AGAINST CREDITOR IN A SUIT AGAINST THE ASSIGNEE—SUBSEQUENT ATTEMPT TO PROVE THE CLAIM.

A decree upon a contested suit by a creditor against the assignee, deciding that the right sought to be established is an unlawful preference, and void under the act, prevents such a surrender under the act as will enable the creditor to prove the claim which was the consideration of such preference, and to come *pari passu* with other general creditors. They may surrender and prove before such a decree, but not afterwards, and when a knowledge of the same has been brought home to them.

In Bankruptcy. Upon petition of Henry C. Robinson, assignee of said bankrupt, to strike off certain claims of Swan, Clark & Co., proved before the register.

*Charles B. Love* and *J. Henry Hoffecker*, for assignee, cited—

Bankrupt act of March 2, 1867; *In re Lee*, 14 N. B. R. 89; *Tinker* v. *Van Dyke*, Id. 112; *Barnewall* v. *Jones*, Id. 278; *Oxford Iron Co.* v. *Slafter*, Id. 380; *Swan, Clark & Co.* v. *Robinson*, 5 FED. REP. 287; *Phelps* v. *Stephens*, 4 N. B. R. 84; *Vorkin* v. *Newartha*, Id. 52; *Rechter's Est.* Id. 221; *Scott* v. *McCarty*, Id. 414; *In re Kipp*, Id. 593; *In re Cramer*, 13 N. B. R. 225; *In re Riorden*, 14 N. B. R. 332; *In re Stein*, 16 N. B. R. 569; *In re Leland*, 9 N. B. R. 200; *In re Dakin*, 19 N. B. R. 181.

As to the bar of the statute of limitations: *In re Cornwall*, 6 N. B. R. 305; *Nicholas* v. *Murray*, 18 N. B. R. 469; *Capelle* v. *The Church*, 11 N. B. R. 536.

*William C. Spruance* and *Anthony Higgins*, for respondents, cited—

*Swan* v. *Robinson*, 5 FED. REP. 287; *In re Cramer*, 13 N. B. R. 225; *In re Riorden*, 14 N. B. R. 332; *Burr* v. *Hopkins*, 12 N. B. R. 211; *In re Davidson*, 3 N. B. R. 106; *In re Kipp*, 4 N. B. R. 190, (593;) *Scott* v. *McCarthy*, Id. 139, (414;) *Hood* v. *Karper*, 5 N. B. R. 358; *In re Stephens*, 6 N. B. R. 533; *In re Black*, 17 N. B. R. 399.

And as to the bar of the statute of limitations: *In re Knoepfel*, 1 N. B. R. 70; *Waples* v. *Magee*, 2 Harrington, 444; *Burton* v. *Waples*, 3 Harrington, 75; Bankrupt Act, § 19; section 5007, Rev. St.; *In re Eldridge*, 12 N. B. R. 540; *Ex parte Ross*, 2 Glynn & J. 46; *Minot* v. *Thatcher*, 7 Metc. 348; *Richardson* v. *Thomas*, 13 Gray, 381; *Collister* v. *Hailey*, Id. 517; Angell, Lim. § 167; Blumensteil, Bankruptcy, 240, § 5057; *Hanger* v. *Abbott*, 6 Wall. 532; *The Protector*, 9 Wall. 687; *U. S.* v. *Wiley*, 11 Wall. 508; *In re Eldridge*, 12 N. B. R. 540; *Peiper* v. *Harmer*, 5 N. B. R. 252; *Stewart* v. *Kan*, 11 Wall. 493; 2 Story, Eq. Jur. § 1531; *Pulteney* v. *Warren*, 6 Ves. 73, 91, 92; *East India Co.* v. *Campion*, 11 Bligh, 158, 187.

BRADFORD, D. J. The questions to be considered and decided arise upon a rule to show cause why certain claims of Swan, Clark & Co., of the city of Philadelphia, against the bankrupt, Thomas J. Graves, should not be disallowed and expunged from the list of unsecured debts proven before the register in bankruptcy. An answer has been put in to the petition and replications thereto, and issues joined. By an amendment, the statute of limitations has been pleaded. These claims consist of two promissory notes, and a book of account for moneys due and owing from the bankrupt to Swan, Clark & Co., and are as follows:

(1) $846.78.        WILMINGTON, DELAWARE, May 20, 1873.
Sixty days after date I promise to pay to the order of Swan, Clark & Co., at the First National Bank of Wilmington, $846.78, without defalcation, for value received.        THOMAS J. GRAVES.
Indorsed: Swan, Clark & Co.

(2) $300.        WILMINGTON, DELAWARE, May 12, 1873.
Sixty days after date I promise to pay to the order of Swan, Clark & Co., at the First National Bank of Wilmington, $300, without defalcation, for value received.        THOMAS J. GRAVES.
Indorsed: Swan, Clark & Co.

(3) A bill of goods sold by Swan, Clark & Co. to the bankrupt, amounting to $222.40, the date of the last entry being June 26, 1873.

The objections to the proof of these claims are—

(1) Payment. (2) The statute of limitations. (3) The reception of a preference against the provisions of the act of congress which they have not surrendered to the assignee for the benefit of the general creditors.

We do not think this plea of payment has been sustained. The declarations to that effect by one of the partners of the firm of Swan, Clark & Co., on the supposition that they had made a valid purchase of certain loan stock, is not enough. Such a declaration must have been made on the supposition that the sale had been a valid one, and as such had paid and wiped out the debt due on the promissory notes and book account. Now, that sale was set aside as void by the circuit court. If Swan, Clark & Co. have any merits on other grounds, and desire to come in on these claims *pari passu* with the other general creditors, they should not be prohibited because of the fact that they were mistaken in the supposition that they had made a valid purchase which had satisfied these notes and the book account. The court decided that no value passed by the transfer of the loan stock to Swan, Clark & Co., therefore there could not have been any payment in this mode of the notes and book account. We think this plea has not been sustained.

The statute of limitations has been urged as a bar to the proof of these notes and book account before the register in bankruptcy. It will be seen that these notes and bill of goods sold were not barred by the statute of limitations at the time of the adjudication of bankruptcy, that having been made on the twenty-ninth day of September, 1873. If they were so barred at that time, it is admitted that the bar remains in force, and they cannot be proven; but if the bar has not already operated to prevent proof, does it run, or is it suspended by the bankruptcy and the appointment of the assignee?

On one side it is urged that the United States courts will follow the state law in applying the statutes of limitations as they are applied in the states when the United States courts sit, and as six years bars the proceeding on notes, and three years on book account, it is alleged by the petitioners that these claims should not be proven. On the other hand, it is nowhere said in the Revised Statutes that claims barred by the state laws shall not be proven before the register in bankruptcy; and such being the case we inquire whether, in the administration of the bankrupt laws, it is consistent with their intention to apply the state limitation laws?

The theory on which the limitation acts are based is the prevention of the collection of stale claims, and this is founded on the reasonable presumption that a man, if he had a valid claim, would proceed to recover it by suit; but on the legal principle of *causa cessante lex ipsa cessat* that rule cannot have application, where, by the provisions of the bankrupt act, the assignee cannot be sued by the creditors. The distribution of the bankrupt's estate is committed to him without vexatious interference by suits of creditors. No time is fixed by law within which they must present their claims for proof. We think, the result of the authorities is that if the bar of the statute is not complete before the adjudication of bankruptcy, it does not run afterwards; and as that was the case here, we are led to conclude that the statute of limitations of the state of Delaware does not present a bar to the proof of these claims. The most serious objection to the proof of these claims is based on the allegation that these creditors have held security for their payment, which they have not surrendered for the benefit of the general creditors. Now, it is undoubtedly true, to enable a secured creditor to prove his claim he must surrender his security, and all benefit and advantage arising therefrom, before he can prove his claim thus secured; and it is also true that if he contests his right to his security in the courts, and chooses to rely on it for the ultimate payment of his claim, and fails, he loses his right to prove his claim as an unsecured one, unless he does it before the entry of the judgment or decree of the court against him. I do not consider it necessary to repeat what has been said on another occasion on this subject, as the view I take of the law and the facts of this case make it unnecessary to do so.

This is an objection to the proof of this claim which appears to me to be insuperable: Swan, Clark & Co. did, without a doubt, hold a security for their claims, which they now wish to prove within the meaning of the bankrupt law. They held the paper or instrument which secured them. It was of such a character that it could have been assigned or transferred to the assignee of the bankrupt prior to the decree, but not after it. It is true that the right to the loan stock was coupled with conditions, but they did not impair the right in the owner to transfer the stock subject to such conditions, or its value in the hands of the assignee after it should have been transferred.

The act of congress makes it imperative on any creditor thus secured to give up his security to the assignee before he shall be permitted to prove his claim. He can elect to stand on one or the other,—

that is, he can rely on his security, or he can give it up and prove his claims as a general unsecured creditor,—and as he elects he must stand or fall. The original act of congress of March 2, 1867, applicable to this case, is in the following words, viz.:

"Any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend thereupon until he shall first have surrendered to the assignee all property, money, benefit, or advantage received by him under such preference." Section 23.

· Now, in point of fact, Swan, Clark & Co. did not make such surrender as was required by the act of congress, but appealed to the decision of the circuit court for this district as to their right to retain the same as their own property; and, as has already been said, the decree of that court was against them on this point. Any surrender, or attempted surrender, of the security after the decree of the court had been announced against them,—and such decree was within the knowledge of the respondents,—is not such a surrender as is contemplated by the act, and would not let in the respondents to prove their claims; and while some of the cases cited go very far in allowing parties to surrender their securities even after judgment or decree has been rendered in a contested suit, yet none of them go to the extent of allowing such a surrender after a decree made has come to the knowledge of the parties before an actual entry of such decree on the record. As long as there is doubt as to the decree or judgment there may be a *locus penitentiæ*, but after that doubt is removed, and a knowledge of the decree or judgment is brought home to the parties, the opportunity of surrender is gone.

We think the result of the authorities cited is to establish the proposition that no surrender of the security upon which a preference has been sought to be obtained can be made after a recovery, so as to let in the respondent to the proof of his claim; at least, this is the result of the modern authorities, and appears to me to be more conformable to reason and the principles on which the bankrupt law is founded than the earlier conflicting decisions to the contrary. See particularly *In re Cramer*, 13 N. B. R. 225,—decision by Judge Nelson, in 1876, after the decree "the *locus penitentiæ* had passed" the contesting party could not surrender. See also *In re Riorden*, 14 N. B. R. 335, by Judge Blatchford, in which, by inference, he holds

that the surrender was not good after recovery. See *In re Stein*, 16 N. B. R. 569, by Judge Blatchford, in which this proposition of inability to surrender the preference after recovery is maintained. Other cases might be cited to sustain this view of the case. The only modern authorities in conflict with them are *In re Black*, 17 N. B. R. 399, and *Burr* v. *Hopkins*, 12 N. B. R. 211.

From the evidence in this cause it appears that there is a conflict of testimony as to the fact of an offer to surrender the security creating the preference; but the respondents having retained this security, and having sought to establish their right to it by a suit in the circuit court of this district, it is manifest that in point of fact they never made such surrender up to the time of the announcement of the decision by the court; nor does it appear that such a surrender was ever made afterwards. For these reasons we deny the right to the respondents to prove their claim founded on the notes and book account, which was the consideration for the security, and we grant the prayer, etc., of the petitioner that the same shall be stricken off.

Considering that this is a case of constructive fraud only, we think it right that the whole costs should be equally divided between the petitioner and the respondent.